1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

11

12

13

14

15

STANBURY ELECTRICAL
ENGINEERING, LLC,

                    Plaintiff,

          v.

ENERGY PRODUCTS, INC.,

                    Defendant.

CASE NO. C16-0362JLR

ORDER GRANTING IN PART
AND DECLINING TO DECIDE
IN PART DEFENDANT'S
MOTION TO DISMISS OR TO
TRANSFER VENUE

## I.      INTRODUCTION

16

17

18

19

20

21

22

          Before the court is Defendant Energy Products, Inc.'s ("Energy Products") motion

to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the

Eastern District of Michigan.  (Mot. (Dkt. # 11).)  The court has reviewed Energy

Product's motion, all of the parties' submissions related to the motion, the balance of the

//

//

ORDER- 1

1  record, and the applicable law. Being fully advised,[1] the court grants in part and declines

2  to decide in part Energy Product's motion. Specifically, the court declines to decide

3  whether it has personal jurisdiction over Energy Products but grants Energy Products'

4  motion to transfer venue to the Eastern District of Michigan.

## II.    BACKGROUND

6       This is a breach of contract case.[2] (Am. Compl. (Dkt. # 1-1) ¶¶ 4.1-4.3.) Plaintiff

7  Stanbury Electrical Engineering, LLC, ("Stanbury") is a Washington limited liability

8  company located in King County, Washington. (*Id.* ¶ 1.1; Smith Decl. (Dkt. # 12) ¶ 8.)

9  Stanbury designs and manufactures battery chargers, trackers, and related products.

10  (Am. Compl. ¶ 3.1.) Don Proctor is Stanbury's regional manager and sales representative

11  located in Toledo, Ohio. (Smith Decl. ¶¶ 8, 12.)

12       Energy Products is a Michigan corporation headquartered in Madison Heights,

13  Michigan. (Am. Compl. ¶ 1.2; Smith Decl. ¶ 4.) Since 2011, Energy Products has been

14  a distributor for Stanbury's line of battery chargers and related products within Michigan

15  and Northern Ohio pursuant to the Distributorship Agreement executed by the two

16  companies. (Smith Decl. ¶¶ 9-11; Stanbury Decl. (Dkt. # 14) ¶ 12.)

17       Stanbury alleges that Energy Products failed to pay Stanbury for various battery

18  chargers and trackers that Stanbury delivered to Energy Products and Energy Products'

---

[1] No party has requested oral argument, and the court does not consider oral argument to be necessary for disposition of this motion. *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] In addition to breach of contract, Plaintiff has also alleged quasi-contract claims for quantum meruit and unjust enrichment. (Am. Compl. (Dkt. #1-1) ¶¶ 5.1-6.3.)

1    end users from March 2014 through December 2014.  (Am. Compl. ¶¶ 3.3-3.7.)  Energy

2    Products denies that it wrongfully withheld payment from Stanbury and asserts that the

3    products in question were defective.  (JSR (Dkt. # 17) ¶ 1.b.)  Further, Energy Products

4    asserts that Stanbury admitted that its products were defective but failed to compensate

5    Energy Products for its damages.  (*Id.*)

6         Stanbury filed its complaint in King County Superior Court (*see* Am. Compl.), but

7    on March 10, 2016, Energy Products removed the action to this court (*see* Notice of

8    Removal (Dkt. # 1)).  On March 31, 2016, Energy Products moved to dismiss the action

9    for lack of personal jurisdiction, or in the alternative, to transfer venue to the United

10   States District Court for the Eastern District of Michigan.  (*See generally* Mot.)  Stanbury

11   opposes the motion.  (Resp. (Dkt. # 13).)  The court now considers Energy Product's

12   motion.

13                        **III.    ANALYSIS**

14        Energy Products moves to transfer venue of this action to the Eastern District of

15   Michigan pursuant to 28 U.S.C. § 1404(a).  (*See* Mot. at 11.)  Energy Products

16   alternatively seeks dismissal for lack of personal jurisdiction.  (*Id.* at 4-11.)  The court

17   may consider Energy Products' motion under 28 U.S.C. § 1404(a) without first

18   determining the issue of personal jurisdiction.  In *Sinochem International Co. v. Malaysia*

19   *International Shipping Corp.*, 549 U.S. 422 (2007), the Supreme Court held that a court

20   may consider the question of *forum non conveniens* without first deciding whether it has

21   subject matter or personal jurisdiction.  *Id.* at 425.  The Court permitted preliminary

22   review of non-merits issues, such as *forum non conveniens*, reasoning that "[j]urisdiction

ORDER- 3

1    is vital only if the court proposes to issue a judgment on the merits." *Id.* at 431 (quotation

2    omitted).  The same rationale applies to motions for change of venue under 28 U.S.C.

3    § 1404(a), which codified the *forum non conveniens* doctrine when the choice is between

4    alternative forums within the United States, and like *forum non conveniens*, is a

5    threshold, "non-merits ground" for ordering transfer.  *See id.* at 432; *see also Strojnik v.*

6    *Heart Tronics, Inc.*, No. CV-09-0128-PHX-FJM, 2009 WL 1505171, at *1 (D. Ariz. May

7    27, 2009) ("We may consider the motion for change of venue under 28 U.S.C. § 1404(a)

8    without first deciding whether we have personal jurisdiction over the[] defendants.");15

9    Charles Alan Wright & Aurthur R. Miller, Federal Practice and Procedure § 3854 ("It

10   may well conserve judicial resources, and serve the interests of the parties as well, to

11   transfer from a forum in which there is a difficult question of personal jurisdiction or

12   venue to a district in which there are no such uncertainties.").

13          In addition, citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463 (1962), the Third

14   Circuit has determined that even where a district court does not have personal jurisdiction

15   over a defendant, the court has discretion under 28 U.S.C. § 1404(a) to decide whether to

16   transfer venue.  *United States v. Berkowitz*, 328 F.2d 358 (3d Cir. 1964).  In *Berkowitz*,

17   the Third Circuit noted that even though *Goldlawr* dealt with 28 U.S.C. § 1406(a), the

18   Supreme Court's "rationale applies equally to § 1404(a), for these are companion

19   sections, remedial in nature, enacted at the same time, and both dealing with the

20   expeditious transfer of an action from one district or division to another."  *Id.* at 361; *see*

21   *also CNA Metals W. Coast, LLC v. Am. Metal Grp., Inc.*, No. C10-5894RJB, 2011 WL

22   128119, at *3 (W.D. Wash. Jan. 14, 2011) ("[E]ven where a district court does not have

1    personal jurisdiction over a defendant, the Court has discretion pursuant to § 1404(a) to

2    decide the question of whether a case should be transferred.").  Based on the foregoing

3    authorities, the court concludes that it has the power to decide the question of transfer

4    under 28 U.S.C. § 1404(a) prior to determining whether it has personal jurisdiction over

5    Energy Products.

6         To support a motion to transfer under Section 1404(a), the moving party must first

7    show the proposed transferee court possesses subject matter jurisdiction over the action,

8    the parties would be subject to personal jurisdiction in the transferee court, and venue

9    would have been proper in the transferee court.  *Hoffman v. Blaski*, 363 U.S. 335, 344

10   (1960); *A.J. Indus., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 386

11   (9th Cir. 1974).  There is no dispute that Energy Products properly removed this action to

12   federal court and that the court has subject matter jurisdiction based on 28 U.S.C. § 1332

13   and diversity of citizenship between the parties.  (*See* Notice of Removal at 2-3; Resp. to

14   OSC (Dkt. # 8); Byrnes Decl. (Dkt. # 9).)  Stanbury also does not contest that this action

15   could have initially been brought in the Eastern District of Michigan.  (*See* Mot. at 11-12

16   (arguing that this suit could have been brought in the Eastern District of Michigan); Resp.

17   at 18-22 (omitting any argument that this suit could not have been brought in that

18   district)); *see also* 28 U.S.C. §§ 1391(a)-(b).  Finally, there is no doubt that the district

19   court in the Eastern District of Michigan would have personal jurisdiction over Energy

20   Products because Energy Products is incorporated under the laws of Michigan and is

21   headquartered in Madison Heights, Michigan.  (*See* Notice of Removal at 3.)  Thus,

22   Energy Products satisfies the threshold requirement of showing that the action could have

1   been originally brought in the Eastern District of Michigan.  *See Hoffman*, 363 U.S. at

2   344; *A.J. Indus.*, 503 F.2d at 386.

3          Once this threshold requirement has been established, the court considers whether

4   the convenience of parties and witnesses, and the interests of justice favor transfer.  *See*

5   28 U.S.C. § 1404(a).  The Ninth Circuit instructs district courts to apply a nine-factor

6   balancing test to determine whether to transfer a case under Section 1404(a).  *Jones v.*

7   *GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  The test balances the

8   following factors:  "(1) the location where the relevant agreements were negotiated and

9   executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's

10  choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts

11  relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the

12  costs of litigation in the two forums, (7) the availability of compulsory process to compel

13  attendance of unwilling non-party witnesses, . . . (8) the ease of access to sources of

14  proof," and (9) the public policy considerations of the forum state.  *Id*. at 498-99.

15  "Additionally, the presence of a forum selection clause is a 'significant factor' in the

16  court's § 1404(a) analysis." *Id.* at 499.

17         Energy Products bears the burden of showing that a transfer is appropriate, *see*

18  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *T-Mobile USA, Inc. v.*

19  *Selective Ins. Co. of Am.*, No. C15-1739JLR, 2016 WL 1464468, at *3 (W.D. Wash. Apr.

20  14, 2016), but the decision to transfer is ultimately left to the sound discretion of the

21  district court and must be made on an "individualized, case-by-case consideration of

22  convenience and fairness," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)

1  (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  The court considers each of

2  the foregoing factors in turn.  Because the case bears a stronger connection to Michigan

3  than to Washington, the court concludes that the case should be transferred to the Eastern

4  District of Michigan.

5        **1.  Location Where the Agreement was Negotiated and Executed**

6        Stanbury is a Washington limited liability company with its principal office in

7  Woodinville, Washington.  (Smith Decl. (Dkt. # 12) ¶ 8.)  Energy Products is Michigan

8  corporation with its principal office in Madison Heights, Michigan.  (*Id.* ¶ 4.)  At a

9  meeting in Pheonix, Arizona, in December 2011, between Andrew Stanbury of Stanbury

10  and Kurt Smith of Energy Products, the parties discussed entering into a distributorship

11  agreement in which Energy Products would become a distributor of Stanbury's products

12  in Michigan and Northern Ohio.  (*See id.* ¶¶ 9-10; Stanbury Decl. (Dkt. # 14) ¶ 12.)

13  During the late December 2011, the parties exchanged a number of emails concerning the

14  proposed distributorship agreement.  (Stanbury Decl. ¶ 12, Ex. 5.)  During the course of

15  this email exchange, Stanbury emailed a copy of the distributor agreement to Energy

16  Products, and Don Brown, who was the President of Energy Products at the time,

17  executed the agreement in Michigan, effective December 23, 2011.  (Smith Decl. ¶ 11.)

18  Mr. Oliver Stanbury, who is the managing member of Stanbury, executed the Agreement

19  on behalf of Stanbury.  (*See* Stanbury Decl. ¶ 13, Ex. 6 at 5.)  Mr. Stanbury testifies that

20  he "was working out of Washington" while the parties were exchanging emails

21  concerning the distributorship agreement, but he does not testify specifically about his

22  location at the time he executed the distributorship agreement.  (*See id.* ¶ 12.)

Based on the foregoing testimony, the court finds that the distributorship agreement was negotiated in part in Arizona and in part through an email exchange between the two companies located in Washington and Michigan.  Energy Products executed the agreement in Michigan.  It is unknown where Stanbury executed the Agreement although Mr. Stanbury testifies that he was working in Washington during the relevant time period.  Because the Agreement appears to have been negotiated and executed in both states, the court concludes that this factor is neutral with respect to transfer of the action.

### 2.   State Most Familiar with the Governing Law

The Distributorship Agreement calls for the application of Washington law. (Stanbury Decl. ¶ 13, Ex. 6 at 5 ("This Agreement shall be construed under, and governed by the laws of the State of Washington.").)  Ordinarily, this would weigh against transfer.  However, it appears that the Uniform Commercial Code ("UCC") will "provide the legal framework for resolving this dispute because it involves the sale of goods between merchants."  *Lycurgan, Inc. v. Rood*, No. 13CV2504 JM NLS, 2013 WL 6229231, at *4 (S.D. Cal. Dec. 2, 2013).  As Energy Products points out (Mot. at 12), both Washington and Michigan have adopted the Uniform Commercial Code.  *See Lige Dickson Co. v. Union Oil Co. of Cal.*, 635 P.2d 103, 105 (Wash. 1981) ("The Uniform Commercial Code as adopted in Washington is found at RCW Title 62A."); *Leith v. Henry Ford Hosp.*, No. 211008, 2000 WL 33420641, at *4 (Mich. Ct. App. May 16, 2000) ("Michigan adopted the UCC with the passage of 1962 PA 174, which became effective January 1, 1964.").  Further, under UCC § 1-102(2)(c), as enacted in both states,

ORDER- 8

1    one of the "[u]nderlying purposes" of the UCC is to "make uniform the law among the

2    various jurisdictions." *See* Mich. Comp. Laws Ann. § 440.1103; RCW § 62A.1-103.

3    Thus, there is likely no significant difference between the law of Washington and the law

4    of Michigan with respect to the parties' dispute here.

5           Moreover, to the extent state contract law is applicable, federal courts are equally

6    equipped to apply distant state laws when the law is not complex. *See, e.g.*,

7    *Barnstormers, Inc. v. Wing Walkers, LLC*, No. 09cv2367 BEN (RBB), 2010 WL

8    2754249, at *3 (S.D. Cal. July 9, 2010) (stating that a federal court in Texas would be

9    equally adept at applying California law related to unfair competition claims). Here,

10    neither party has asserted that the substantive law will be complex. Accordingly,

11    regardless of the substantive state law applied in this case, both district courts are equally

12    equipped to handle the case. Thus, the court concludes that this factor is neutral.

13         **3. Plaintiff's Choice of Forum**

14           Stanbury asserts that Washington is not only its choice of forum, but the parties'

15    choice of forum by virtue of a forum selection clause in the distributorship agreement.

16    (Resp. at 20.) The contractual provision Stanbury relies upon states: "Applicable Law,

17    Jurisdiction, and Venue. This Agreement shall be construed under, and governed by the

18    laws of the State of Washington." (Stanbury Decl. ¶ 13, Ex. 6 at 5.) Stanbury argues that

19    the heading—"Applicable Law, Jurisdiction and Venue"—"establishes that the entire

20    Section includes two related, but distinct, topics: (1) applicable law (choice of law), and

21    (2) jurisdiction and venue (choice of forum)," and "[t]he one and only sentence that

22    follows is to be read to apply to both of the topics in the Section." (Resp. at 9; Stanbury

ORDER- 9

1   Decl. ¶ 13, Ex. 6.)  Thus, Stanbury concludes that the clause should be read to mean that

2   the parties selected Washington not only as their choice of law but also as their choice of

3   forum.

4        Energy Products counters that, despite the heading, the clause at issue relates

5   solely to choice of law and not choice of forum.  To determine whether an agreement

6   shows consent to a particular tribunal, Washington courts distinguish between choice-of-

7   forum clauses, "in which the parties agree on a presiding tribunal" and choice-of-law

8   clauses, in which the parties "designate only the body of law to be applied in resolving

9   the dispute, not the location for its resolution."  *Kysar v. Lambert*, 887 P.2d 431, 440

10  (Wash. Ct. App. 1995).  Further, Energy Products argues, without citation to authority,

11  that "headings which precede the specific provisions of a contract are customarily not

12  considered terms of the contract."  (Reply (Dkt # 15) at 2.)  Although captions are part of

13  the contract, in the context of insurance contracts, Washington courts have said that

14  captions "should never . . . be taken to override the intention of the parties . . . as shown

15  by the provisions and clauses inserted thereunder."  *Stanley v. Safeco Ins. Co. of Am.*, 747

16  P.2d 1091, 1093 (Wash. 1988) (quoting *Nat'l Indem. Co. v. Giampapa*, 399 P.2d 81, 85

17  (Wash. 1965)).  Here, the court interprets the clause and its heading to mean that,

18  although the parties considered both choice of law and choice of forum, as indicated by

19  the heading, they came to agreement only with respect to choice of law, as indicated by

20  the clause itself.  Thus, the court concludes that the distributorship agreement does not

21  contain a choice of forum clause.

22

1    Nevertheless, the Western District of Washington is Stanbury's choice of forum.

2    As the plaintiff in this action, Stanbury's choice of forum receives substantial deference,

3    and Energy Products must "make a strong showing of inconvenience" to upset that

4    choice.  *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir.

5    1986).  Stanbury's preference, however, is not dispositive.  *See Norwood v. Kirkpatrick*,

6    349 U.S. 29, 32 (1955) (holding that "the discretion to be exercised is broader" under

7    Section 1404(a) than under the doctrine of *forum non conveniens*).  In particular, courts

8    are hesitant to defer to a plaintiff's choice of forum when the case lacks strong ties to that

9    district.  *See Pedigo Prods., Inc. v. Kimberly-Clark Worldwide, Inc*., No. 3:12-CV-05502-

10   BHS, 2013 WL 364814, at *3 (W.D. Wash. Jan. 30, 2013) ("Where the action has little

11   connection with the chosen forum, less deference is accorded plaintiff's choice, even if

12   plaintiff is a resident of the forum.").  As discussed in greater detail in the following

13   sections, although this case features some connections to Washington, almost all relevant

14   events occurred in Michigan and the substantial majority of potential witnesses and other

15   evidence are located either in Michigan or in closer proximity to Michigan than

16   Washington.  Although these facts are not enough to completely overcome the

17   presumption in favor of the Stanbury's choice of forum, the court finds that the limited

18   number of case-related connections to Washington means that this factor weighs only

19   marginally against transfer.

20   **4.  Parties' Contacts with the Forum**

21   As noted above, Stanbury is a Washington limited liability company with its

22   principal office in Woodinville, Washington.  (Smith Decl. ¶ 8.)  Stanbury's products are

1   manufactured in New Zealand and Washington.  (*Id.* ¶ 15.)  However, Stanbury employs

2   a regional sales manager, Don Proctor, whose home base is located in Toledo, Ohio.  (*See*

3   *id.* ¶¶ 8, 14; Byrd Decl. (Dkt. # 16) ¶ 5, Ex. A (attaching copy of Stanbury's regional

4   sales manager's business card, which provides an address in Ohio).)[3]

5         After the parties executed the Distributorship Agreement, Mr. Proctor regularly

6   visited Energy Products' Michigan office to conduct business, work with Energy

7   Products salespeople and visit end-users of Stanbury's products in Michigan and Ohio.

8   (Smith Decl. ¶ 14; Bryd Decl. ¶ 6.)  Indeed, Mr. Proctor, who is located in Ohio, handled

9   virtually all of Energy Products' transactions.  (Bryd Decl. ¶¶ 4, 6.)  Energy Products did

10  not conduct substantive negotiations or discussions regarding Stanbury's allegedly

11  defective products with anyone in Stanbury's Washington office—all such discussions

12  occurred in Michigan or Ohio.  (*Id.* ¶¶ 9-10.)  All of the negotiations and communications

13  between Energy Products and Stanbury leading up to each of the disputed orders

14  referenced in the complaint and the performance of each of those orders occurred in

15  Michigan or Ohio—not Washington.  (Smith Decl. ¶ 17; Bryd ¶¶ 10, 13.)  However,

16  Energy Products sent copies of the purchase orders that it negotiated in Michigan to

17  Stanbury's offices in Washington via email.  (Stanbury Decl. ¶¶ 16-20, Exs. 7-8; Byrd

18  Decl. ¶ 13.)

19

20  _____

21      [3] Stanbury acknowledges that its regional sales manager lives in Ohio, but nevertheless
    asserts that Stanbury does not maintain a business premises in Ohio. (Stanbury Decl. ¶ 14.)  The
    court notes, however, that Stanbury's regional sales manager provides an Ohio address on his

22  business card.  (Bryd Decl. ¶ 5, Ex. A.)

1  Energy Products is a Michigan corporation with its principal place of business in

2  Madison Heights, Michigan.  (Stanbury Decl. ¶ 4.)  Energy Products does not have an

3  office, real property, bank accounts, or employees in Washington.  (Smith Decl. ¶¶ 5-6.)

4  No Energy Products agent has ever visited Stanbury's Washington offices or negotiated

5  or signed any agreements in Washington.  (*Id.* ¶ 13.)  During the course of the distributor

6  agreement at issue here, Energy Products did not distribute Stanbury products in the State

7  of Washington.[4]  (Bryd Decl. ¶ 8.)

8  Besides the facts that Stanbury is headquartered in Washington and Energy

9  Products emailed copies of purchase orders related to the distributorship agreement to

10  Stanbury's offices in Washington, virtually all of the parties' case-related contacts

11  occurred in Michigan or Ohio.  In the context of this case, therefore, the parties' contacts

12  with Michigan have greater significance.  *See Silver Valley Partners, LLC. v. DeMotte*,

13  No. C05-5590 RBL, 2006 WL 2711764, at *3 (W.D. Wash. Sept. 21, 2006) (transferring

14  venue because "both parties have case-related contacts with the District of Idaho, and

15  only plaintiffs have case-related contacts with the Western District of Washington").

16  Thus, the court concludes that this factor weighs in favor of transfer to the Eastern

17  District of Michigan.

18  //

19  //

20

21      [4] Stanbury asserts that Energy Products distributed some Stanbury products in
22  Washington prior to the term of the distributor agreement (Stanbury Decl. ¶¶ 8-11, Exs. 3-4), but
   Energy Products disputes this assertion (Bryd Decl. ¶ 8).

1     **5.   Contacts Relating to Plaintiff's Cause of Action in the Chosen Forum**

2         As detailed in previous sections, virtually all of the underlying events relating to

3  Stanbury's cause of action and the parties' dispute occurred in Michigan or Ohio. *See*

4  *supra* §§ III.1, .4. The only contacts in Washington consist of Stanbury's location in

5  Washington State (Smith Decl. ¶ 8), the fact that distributorship agreement was

6  negotiated in part and possibly executed in part in Washington State (*see* Stanbury Decl.

7  ¶ 12), and the fact that Energy Products sent email copies of the orders at issue to

8  Stanbury's offices in Washington (*id.* ¶¶ 16-20, Exs. 7-8; Bryd Decl. ¶ 13). Accordingly,

9  the court concludes that this factor weighs in favor of transfer.

10     **6.   Differences in the Cost of Litigation in the Two Forums**

11        When considering the difference in cost between two forums, courts disfavor

12  transferring venue when "transfer would merely shift rather than eliminate" costs and

13  inconvenience. *Decker Coal*, 805 F.2d at 843. The relative cost analysis focuses

14  primarily on the venue's proximity to witnesses. *See Silver Valley Partners*, 2006 WL

15  2711764, at *4. Stanbury identifies three Stanbury witnesses who are located in

16  Washington: Mr. Stanbury, Claire Stanbury, and Andrew Stanbury. (Stanbury Decl.

17  ¶¶ 2-4.) Mr. Stanbury is the Managing Member of Stanbury, and he participated in the

18  parties' negotiations concerning the Distributor Agreement, executed the Agreement, and

19  received copies of purchase orders pursuant to the Agreement and other email

20  correspondence from Energy Products. (*Id.* ¶¶ 1, 5-7, 9-11, 16-19, Exs. 2-4, 6-7.)

21  Andrew Stanbury is also a part-owner of Stanbury and a Stanbury employee. (*Id.* ¶ 4.)

22  He also participated in initial discussions and subsequent negotiations concerning the

1    distributorship agreement.  (*Id.* ¶ 12, Ex. 5.)  Claire Stanbury is a part-owner of Stanbury

2    and a Stanbury employee.  (*Id.* ¶ 3.)  She received copies of purchase orders related to the

3    distributorship agreement.  (*Id.* ¶¶ 9-11, 16-19, Exs. 2-4, 7.)  Ms. Stanbury's involvement

4    in this dispute appears to be largely administrative.  (*See id.*; *see also* Bryd Decl. ¶ 13

5    ("Energy Product's [sic] act of emailing copies of purchase orders for the transactions at

6    issue in this case to Stanbury's Washington office was purely incidental to its dealing

7    with Mr. Proctor in Michigan.  Energy Products did not have substantive negotiations or

8    discussions regarding those purchase order [sic] with anyone in Stanbury's Washington

9    office.").)  Thus, Ms. Stanbury does not appear to be a key witness.

10            On the other hand, Don Proctor, Stanbury's regional sales manager, is located in

11   Ohio (Stanbury Decl. ¶ 14), and he "routinely visited Energy Products' office in

12   Michigan to conduct Stanbury business" (Bryd Decl. ¶ 6).  Stanbury describes Mr.

13   Proctor as Stanbury's "primary sales and service support contact for Energy Products,"

14   and Energy Products also considers Mr. Proctor to be a key witness.  (Stanbury Decl.

15   ¶ 14; Bryd Decl. ¶ 15.)  In addition, all of Energy Products' agents and employees and all

16   of Energy Products' customers, who received allegedly defective Stanbury products, are

17   located in Michigan, Ohio, or Kentucky.  (Bryd Decl. ¶¶ 11, 15 Exs. C-F.)

18            Based on the foregoing, the court finds transfer is likely to reduce litigation costs

19   overall because the majority of key witnesses, including Mr. Proctor, all of Energy

20   Products' employees, and Energy Products' customers, are closer in proximity to

21   Michigan than Washington.  Litigation costs decrease "when venue is located near the

22

ORDER- 15

most witnesses expected to testify." *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088, 1095 (N.D. Cal. 2013.)  Accordingly, this factor favors transfer.

### 7.  Availability of Compulsory Process to Compel Attendance of Unwilling Non-Party Witnesses

A court's subpoena power is only relevant if non-party witnesses within the state will likely refuse to testify.  *See Silver Valley Partners*, 2006 WL 2711764, at *4 (concluding that the fact that "[n]one of these witnesses will likely be unwilling to testify" eliminates this factor's importance).  For example, the court in *Silver Valley Partners* determined that the availability of subpoena power in Washington to compel non-party witnesses did not weigh on the transfer question because the plaintiff's Washington witnesses were "experts, presumably paid for their testimony," and thus would almost certainly be willing to testify.  *Id.*  Here, neither party has identified any non-party witnesses who will likely refuse to testify.  (*See* Mot.; Resp.)  Therefore, the court finds that this factor is neutral.

### 8.  Ease of Access to Sources of Proof

This factor focuses on the location of witnesses, documentary evidence, and inventory to be inspected, if any.  *See Jones*, 211 F.3d at 499; *Silver Valley Partners*, 2006 WL 2711764, at *4.  As discussed above, most of the key witnesses identified at this juncture are located closer to Michigan than Washington.  *See supra* § III.6.  The court notes that the ability to transfer documents electronically with relative ease and little expense may lessen the importance of this factor with respect to documentary evidence.  Further, neither party provided any information concerning where the

1   allegedly defective products are physically located at this juncture.  Nevertheless, in light

2   of the location of witnesses, the court concludes that this factor weighs in favor of

3   transfer.

4       **9.   Public Policy of the Forum State**

5       Public policy factors include the "local interest in having localized controversies

6   decided at home" and deciding cases "where the claim arose."  *Decker Coal*, 805 F.2d at

7   843.  Additionally, states have an interest in providing a forum for their injured residents.

8   *Hansen v. Combined Transp., Inc.*, No. C13-1298RSL, 2013 WL 5969863, at *4 (W.D.

9   Wash. Nov. 7, 2013).  In this case, despite the fact that Stanbury is a Washington limited

10  liability company, the parties' dispute arose in Michigan because the distributorship

11  agreement was with a Michigan company, the agreement was intended to cover the

12  distribution of Stanbury's line of battery chargers and related products within Michigan

13  and Northern Ohio, and the purchase orders and allegedly defective products at issue

14  were delivered to end-users in Michigan and Ohio.  *See supra* §§ III.1, .4, .5.  Although

15  Washington retains some interest in providing Stanbury, a Washington plaintiff, a forum

16  for redress, Michigan also has an interest in resolving this localized controversy at home.

17  The court, therefore, finds this factor to be neutral.

18      **10.  Balancing the *Jones* factors**

19      Balancing the above factors, the court finds that Energy Products has met its

20  burden of demonstrating that transfer is appropriate.  The court finds that the only factor

21  that weighs marginally against transfer is Plaintiff's choice of forum.  *See supra* § III.3.

22  Of the remaining factors:  four weigh in favor of transfer, *see supra* §§ III.4, .5, .6, .8, and

ORDER- 17

1   four are neutral, *see supra* §§ III.1, .2, .7, .9.  Ordinarily the defendant must "make a

2   strong showing of inconvenience" to upset the plaintiff's choice of forum.  *Decker Coal*,

3   805 F.2d at 843.  In this case, Energy Products has made the necessary showing.  Most

4   importantly, the majority the parties' and the case-related contacts are in the Eastern

5   District of Michigan.  *See supra* §§ III.4, .5.  The same is true for the majority of

6   witnesses and other evidence.  *See supra* §§ III.6, .8.  Accordingly, the court concludes

7   that transfer to the Eastern District of Michigan pursuant to 28 U.S.C. § 1404 is

8   warranted.

9                                    **IV.    CONCLUSION**

10          For the foregoing reasons, the court DECLINES to DECIDE Energy Products'

11   motion to dismiss for lack of personal jurisdiction and GRANTS Energy Products'

12   motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Dkt. # 11).  The court

13   DIRECTS the Clerk of Court to transfer this case to the Eastern District of Michigan.

14          Dated this 13th day of June, 2016.

15

16

17          _____

18          JAMES L. ROBART
             United States District Judge

19

20

21

22

ORDER- 18